```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF MICHIGAN

 3   UNITED STATES OF AMERICA,      )
                                    ) Case No. 15-20073
 4       vs.                        )
                                    ) Bay City, Michigan
 5   JOHN DEREK DUGAN,              )
                                    ) April  30, 2015
 6       Defendant.                 )
     _____) 9:52 a.m.
 7

 8                       TRANSCRIPT OF PLEA
             BEFORE THE HONORABLE PATRICIA T. MORRIS
 9               UNITED STATES MAGISTRATE JUDGE

10   APPEARANCES:

11   For the Government:   ROBERT W. HAVILAND
                           United States Attorney
12                         Eastern District of Michigan
                           600 Church Street; Suite 210
13                         Federal Building
                           Flint, MI 4850
14
     For the Defendant:    JEFFREY M. DAY
15                         Gorte & Day
                           918 N. Water Street
16                         Bay City, MI  48708
                           (989) 894-5670
17

18

19
     Recorded by:          Kristen Krawczyk
20
     Transcribed by:       Carol M. Harrison, RMR, FCRR
21                         1000 Washington Avenue
                           Bay City, MI  48708
22

23

24        TRANSCRIPT PRODUCED FROM DIGITAL VOICE RECORDING
             TRANSCRIBER NOT PRESENT AT LIVE PROCEEDINGS
25
```

```
 1                    P R O C E E D I N G S
 2            (At 9:52 a.m., proceedings commenced.)
 3            (Defendant present.)
 4            THE COURT:  Good morning.  The Court calls the case
 5   of the United States versus John Derek Dugan, Case
 6   No. 15-20073.  Could I have the attorney appearances, please.
 7            MR. HAVILAND:  Robert Haviland for the Government,
 8   Your Honor.
 9            THE COURT:  Thank you.
10            MR. DAY:  Good morning, Your Honor.  Jeff Day
11   appearing on behalf of John Dugan.
12            THE COURT:  Thank you, sir.  Mr. Dugan, do you
13   remember earlier today signing a consent to enter a guilty plea
14   form?
15            THE DEFENDANT:  Yes, Your Honor.
16            THE COURT:  In that form you've indicated that you
17   understand that although I'll be taking your guilty plea today,
18   you will be sentenced by judge -- the district judge, who is
19   Judge Ludington, so even though I'm taking your guilty plea, I
20   will not be the judge that sentences you, instead it will be
21   Judge Ludington.  Do you understand that process?
22            THE DEFENDANT:  Yes, Your Honor.
23            THE COURT:  And are you okay with the process
24   happening that way?
25            THE DEFENDANT:  Yes, Your Honor.
```

```
 1              THE COURT:  Good.  Good.  Mr. Day, do you mind if I
 2   swear in your client?
 3              MR. DAY:  No, Your Honor.
 4              THE COURT:  Mr. Dugan, could you, to the best of your
 5   ability, raise your right hand.
 6              (Defendant sworn by the Court at 9:53 a.m.)
 7              THE COURT:  What's your full name, sir?
 8              THE DEFENDANT:  John Derek Dugan.
 9              THE COURT:  And how old are you?
10              THE DEFENDANT:  Twenty-nine.
11              THE COURT:  How far did you get in school?
12              THE DEFENDANT:  I got my GED -- I quit in 12th grade
13   and got my GED.
14              THE COURT:  Good for you.  That's good.  Do you have
15   any difficulties reading, writing or understanding English?
16              THE DEFENDANT:  No, Your Honor.
17              THE COURT:  Are you under the influence today of any
18   medicine?
19              THE DEFENDANT:  No, Your Honor.
20              THE COURT:  Are you under the influence of any drugs
21   or alcohol?
22              THE DEFENDANT:  No, Your Honor.
23              THE COURT:  And have you been treated recently for
24   any mental health issues or addiction to drugs?
25              THE DEFENDANT:  No, Your Honor.
```

```
 1              THE COURT:  Very well.  The record should reflect my
 2   conclusion that the defendant is capable of tendering a knowing
 3   plea.  Do you agree, Mr. Haviland?
 4              MR. HAVILAND:  Yes, Your Honor.
 5              THE COURT:  And, Mr. Day?
 6              MR. DAY:  Yes, I do, Your Honor.
 7              THE COURT:  The charge that you are charged with and
 8   will be pleading guilty to today is Count Five of the
 9   indictment that charges you with possession with intent to
10   distribute heroin.  The maximum possible penalties for that
11   crime are imprisonment of not more than 20 years, supervised
12   release of at least three years, a fine of no more than
13   $1 million, and it also carries a special assessment of $100.
14   Do you understand the maximum possible penalties, Mr. Dugan?
15              THE DEFENDANT:  Yes, Your Honor.
16              THE COURT:  You have Mr. Day representing you here
17   today.  Have you had a chance to go over and discuss the plea
18   agreement with him?
19              THE DEFENDANT:  Yes, Your Honor.
20              THE COURT:  Do you feel like you understand the terms
21   of the agreement?
22              THE DEFENDANT:  Yes, Your Honor.
23              THE COURT:  And are you satisfied with Mr. Day's
24   advice?
25              THE DEFENDANT:  Yes, Your Honor.
```

```
 1            THE COURT:  Good.  If your guilty plea is accepted,
 2   of course, you're giving up some important rights.  The most
 3   obvious one is the right that you would have for a trial, so by
 4   pleading guilty you will not have a trial by either a judge or
 5   a jury.  Do you understand that, sir?
 6            THE DEFENDANT:  Yes, Your Honor.
 7            THE COURT:  In addition, there are things that happen
 8   at trial that you're also giving up.  At trial you'd be
 9   entitled to the presumption of innocence, and it would be up to
10   the Government to prove that you are responsible for each of
11   the requirements or elements of the crime beyond a reasonable
12   doubt, but by pleading guilty, you're giving up that right as
13   well.  Do you understand that?
14            THE DEFENDANT:  Yes, Your Honor.
15            THE COURT:  In addition, at trial you'd have the
16   continued right to assistance of counsel, and the Court would
17   make sure that you had an attorney represent you at trial, and
18   that attorney would have the right, of course, to see and hear
19   all the witnesses that -- and evidence that the Government
20   presented, and they could cross-examine those witnesses on your
21   behalf, but by pleading guilty, you're giving up those rights
22   as well.  Do you understand that, sir?
23            THE DEFENDANT:  Yes, Your Honor.
24            THE COURT:  And, finally, at trial, of course, you
25   would have the right to compel witnesses for your defense, if
```

you chose to do that.  On the other hand, if you decided not to present any witnesses, including yourself if you decided you did not want to testify, and did not want to present any evidence, that lack of evidence or your decision not to testify could not be held against you, and the Court would instruct any jury that you have -- that you do not have to testify, you don't have to present any evidence, because the Government has the burden to prove you guilty beyond a reasonable doubt, but because you're pleading guilty, you're giving up those rights as well.  Do you understand that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  There are also civil rights consequences to a guilty plea to a felony.  Your right to vote, hold public office, serve on a jury and get a passport will be temporarily affected while you're serving any portion of your sentence.  But the other one that lasts forever is your right to possess firearms and ammunition will forever be illegal under federal law after pleading guilty to a felony.  Do you understand that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Haviland, would you summarize the important provisions of the Rule 11 agreement for us.

MR. HAVILAND:  Yes, Your Honor.  Thank you.  Under the agreement, Mr. Dugan will be pleading guilty to Count Five of the indictment, which charges him with possessing with

intent to distribute heroin in violation of -- it should say 21 United States Code Section 841(a)(1). The elements of that offense are that the defendant knowingly possessed a controlled substance, that he did so with intent to distribute it and that the substance was, in fact, heroin, a Schedule I controlled substance.

The factual basis for Mr. Dugan's guilty plea is set forth at some length on the second page of the plea agreement, and by signing the plea agreement, Mr. Dugan has agreed that he has read, understands that statement of the factual basis, and agrees that it is true to the best of his knowledge and belief.

Under the agreement, there are no guideline disputes. The defendant admits that he is a career offender within the meaning of the guidelines and that results in his guideline range being 151 to 188 months, as stated in worksheets that are attached to the plea agreement.

The Government has agreed to recommend a two-level reduction for his acceptance of responsibility and a third level for his prompt acceptance of responsibility. The agreement provides that the Court will impose a sentence pursuant to the sentencing statute, 18 USC Section 3553, and in doing so, the Court must consider the sentencing guideline range but, of course, is not bound by that range.

The agreement also provides that the Court may not exceed the midpoint of the sentencing guideline range as

```
 1  determined by Paragraph 2B of this agreement.
 2          I'm sorry, Your Honor, I forgot to mention a couple
 3  of circumstances in which that guideline range of 151 to 188
 4  months could be increased.  If, for example, the defendant's
 5  criminal history works out to be worse than we had ex -- well,
 6  that would not affect it actually.
 7          THE COURT:  He's at the top, isn't he, already?  Yes.
 8          MR. HAVILAND:  He's at the top.  That would not
 9  affect it.  However, if the defendant should not truthfully
10  comply with probation's instructions or provide false
11  information to probation, or otherwise fails to demonstrate
12  acceptance of responsibility, then he could lose the two or
13  three points that have been taken away in the worksheets that
14  are attached to the plea agreement, and in that instance, the
15  defendant agrees that his guideline range would, in fact,
16  increase.
17          The agreement provides, as the Court has previously
18  stated, for a minimum term of supervised release of at least
19  three years and could be as long as life.  There will be a
20  special assessment of $100 as required by federal law.  The
21  agreement further provides that the Court may impose a fine in
22  any amount up to $1 million, which is the statutory maximum.
23  The agreement also provides that restitution is not applicable.
24          If the Court accepts this agreement, the Government
25  will dismiss Counts One through Four of the indictment and will
```

```
 1  not bring any additional charges based on any of the conduct
 2  reflected in the attached worksheets.
 3          Now, paragraph 5 is an important provision of the
 4  plea agreement.  It provides that in exchange for defendant's
 5  guilty plea, and acceptance of responsibility, the Government
 6  will recommend that the Court sentence defendant to no more
 7  than the minimum of the guideline range that is determined
 8  pursuant to Paragraph 2B of the agreement.
 9          Defendant understands that the Government's
10  recommendation is not binding on the Court, and if the Court
11  decides not to follow that recommendation, defendant will not
12  have the right to withdraw his guilty plea or reduce -- or
13  withdraw from the agreement.
14          The Government may withdraw from the Government only
15  if the Court finds that the correct guideline range is less
16  than that recommended by the Government.  The defendant may
17  withdraw from the agreement, and may withdraw his guilty plea,
18  if the Court decides to impose a sentence higher than the
19  maximum allowed, which as I mentioned earlier, is the midpoint
20  of the guideline range that is determined by the Court.
21          Paragraph 7 provides an appeal waiver of which
22  pursuant to Sixth Circuit case law I'd like to read verbatim
23  into the record:
24          Paragraph 7 provides that if the sentence imposed
25  does not exceed the maximum allowed by Part 3 of this
```

```
 1  agreement, defendant waives the right to appeal his conviction
 2  or sentence on any grounds.  If the sentence imposed is within
 3  the guideline range determined by Paragraph 2B, the Government
 4  agrees not to appeal the sentence but it retains its right to
 5  appeal any sentence below that range.  Nothing in this waiver
 6  shall be construed to bar a claim of ineffective assistance of
 7  counsel, provided that the defendant properly raises such claim
 8  by collateral review under 28 United States Code Section 2255.
 9              I believe that states the essential terms of the
10  agreement, Your Honor.
11              THE COURT:  Thank you, Mr. Haviland.  Mr. Dugan, when
12  you were listening to the Government highlight the important
13  parts of the agreement, did you hear the Government say
14  anything that surprised you or that you did not expect to hear?
15              THE DEFENDANT:  No, Your Honor.
16              THE COURT:  Was there anything missing from what the
17  Government said that you think is important and that you
18  expected to hear but you did not hear?
19              THE DEFENDANT:  No, Your Honor.
20              THE COURT:  Just to highlight a few of the areas
21  that -- Mr. Haviland did a good job of describing them, but
22  because they are so important, I just want to make sure that
23  you understand them.
24              Your right to either withdraw from the agreement or
25  appeal your conviction, which is today's guilty plea, or your
```

```
 1  sentence on any grounds hinges on whether the sentence in your
 2  case ultimately exceeds the maximum allowed by the agreement.
 3  Do you understand that?
 4          THE DEFENDANT:  Yes, Your Honor.
 5          THE COURT:  And so then the next logical question is,
 6  well, what is the maximum allowed by the agreement, and the
 7  answer to that question is the sentence cannot exceed the
 8  midpoint of the appropriate sentencing guideline range.  If the
 9  sentence exceeds the midpoint of the sentencing guideline
10  range, then it has exceeded the maximum allowed by the
11  agreement.  Do you understand that?
12          THE DEFENDANT:  Yes, Your Honor.
13          THE COURT:  And everyone thinks that the appropriate
14  sentencing guideline range is 151 to 188 months right now.  Do
15  you understand that?
16          THE DEFENDANT:  Yes, Your Honor.
17          THE COURT:  That guideline range could change, and
18  the way that it could change, as highlighted by Mr. Haviland,
19  was if after today, after pleading guilty, you make any false
20  statements or withhold information from the probation officer,
21  commit a new offense or otherwise demonstrate that you're not
22  accepting responsibility for this offense, or if you obstruct
23  justice.  So do you understand that if any of those things
24  happen, the guideline range could be a higher range, and that
25  would be the appropriate guideline range, and as long as you
```

```
 1  were sentenced to something not higher than the midpoint of
 2  that guideline range, you could not withdraw from this
 3  agreement or appeal your guilty plea today or your sentence.
 4  Do you understand that, Mr. Dugan?
 5          THE DEFENDANT:  Yes, Your Honor.
 6          THE COURT:  Good.  The other part of this is that the
 7  Government has indicated that it will recommend that you get
 8  sentenced to the minimum of whatever the appropriate guideline
 9  range is, but that is just a recommendation.  That does not
10  change or otherwise affect your right to withdraw from the
11  agreement or appeal.  Do you understand that, sir?
12          THE DEFENDANT:  Yes, Your Honor.
13          MR. HAVILAND:  Could I clarify that just a little
14  bit?
15          THE COURT:  Sure.
16          MR. HAVILAND:  I believe the exact term is that the
17  Government will recommend that the sentence not exceed the
18  minimum of the guideline range.  By that we're not indicating
19  any objection to a downward departure.
20          THE COURT:  Thank you, Mr. Haviland. And that brings
21  up another thing, which is that even though, you know, these
22  are recommendations, and it's an agreement between you and the
23  Government, Judge Ludington, of course, is not a party to this
24  agreement.  He's the sentencing judge, and he does have the
25  power and the authority to sentence you to what he thinks is
```

```
 1  appropriate, which could be lower than the applicable guideline
 2  range, or it could be higher than the applicable guideline
 3  range.  Do you understand he has that power?
 4            THE DEFENDANT:  Yes, Your Honor.
 5            THE COURT:  Of course, if he sentences you in excess
 6  of the midpoint of the appropriate guideline range, that
 7  triggers some rights that you have under this agreement to
 8  withdraw, but he does have that authority, and he's not a party
 9  to this agreement.  Do you understand that, sir?
10            THE DEFENDANT:  Yes, Your Honor.
11            THE COURT:  Very well.  Mr. Day, is there anything
12  else that you would like to put on the record as far as this
13  agreement is concerned?
14            MR. DAY:  Just briefly.  John, you had some questions
15  about the very things that the Court and Mr. Haviland have
16  talked about, the difference between the Rule 11 agreement and
17  the recommendation and the guideline range, correct?
18            THE DEFENDANT:  Yes.
19            MR. DAY:  And we talked about those -- those things
20  at length, and I -- I did my best to explain the difference
21  between the two to you, correct?
22            THE DEFENDANT:  Yes.
23            MR. DAY:  And are you confident that you understand
24  the difference between the two?
25            THE DEFENDANT:  Yes.
```

```
 1            MR. DAY:  Okay.  Thank you, Your Honor.
 2            THE COURT:  Very well.  And I just wanted to mention,
 3   too, Mr. Dugan, that your lawyer did a good job in this because
 4   it's an unusual thing to see the recommendation that has been
 5   achieved here, and it's also -- usually the agreements talk
 6   about the top of the guideline range and not the midpoint, so
 7   your lawyer has done a good job in negotiating the plea for
 8   you.
 9            Has anyone made any promises to you other than those
10   that are stated in this agreement?
11            THE DEFENDANT:  No, Your Honor.
12            THE COURT:  In other words, is this agreement, then,
13   the entire agreement between you and your attorney and the
14   Government?
15            THE DEFENDANT:  Yes, Your Honor.
16            THE COURT:  Has anyone told you that Judge Ludington
17   is going to sentence you to a specific number of months?
18            THE DEFENDANT:  No, Your Honor.
19            THE COURT:  Has anyone used any force, threats or
20   violence to try to make you plead guilty?
21            THE DEFENDANT:  No, Your Honor.
22            THE COURT:  Are you pleading guilty today, Mr. Dugan,
23   because you are guilty?
24            THE DEFENDANT:  Yes, Your Honor.
25            THE COURT:  Are you doing so freely and voluntarily?
```

```
 1              THE DEFENDANT:  Yes, Your Honor.
 2              THE COURT:  Is it your choice and your choice alone
 3  to plead guilty today?
 4              THE DEFENDANT:  Yes, Your Honor.
 5              THE COURT:  Mr. Day, would you like to question your
 6  client as to the factual basis?
 7              MR. DAY:  Yes, Your Honor.  Mr. Dugan, on or about
 8  July 10th, 2014, were you living at 302 Huron Street in
 9  Houghton Lake, Michigan?
10              THE DEFENDANT:  Yes, sir.
11              MR. DAY:  And on that date -- on or about that date,
12  did you sell a small amount of heroin to what turned out to be
13  a confidential informant working with STING?
14              THE DEFENDANT:  Yes, sir.
15              MR. DAY:  And later that day were you stopped by
16  officers that worked for STING?
17              THE DEFENDANT:  Yes, sir.
18              MR. DAY:  And when you were stopped, you had
19  approximately eight packets of heroin on you?
20              THE DEFENDANT:  Yes, sir.
21              MR. DAY:  That you had -- and you admitted to them
22  later that day that you had bought 12 packs of heroin earlier
23  that day?
24              THE DEFENDANT:  Yes, sir.
25              MR. DAY:  That you had sold some of them, that you
```

```
 1  had used some of them, that the remaining ones were some for
 2  your own use and some for sale to other folks?
 3          THE DEFENDANT:  Yes, sir.
 4          MR. DAY:  You admitted also that in the past that you
 5  had sold cocaine, Dilaudid and heroin in small quantities to
 6  numerous users since being released from jail in 2013, correct?
 7          THE DEFENDANT:  Yes, sir.
 8          MR. DAY:  And many of those sales were from your
 9  residence at 302 Huron Street in Houghton Lake?
10          THE DEFENDANT:  Yes, sir.
11          MR. DAY:  We also talked about the career offender
12  and the qualifications for that, correct?
13          THE DEFENDANT:  Yes, sir.
14          MR. DAY:  And you're admitting on the record here
15  that you qualify under the statute as a career offender?
16          THE DEFENDANT:  Yes, sir.
17          THE COURT:  Mr. Haviland, any further questions for
18  the factual basis?
19          MR. HAVILAND:  Just to clarify, would you ask
20  Mr. Dugan if he -- the admissions he made to the officers were
21  true.
22          MR. DAY:  Those -- the admissions that you gave to
23  the STING officers on the day we talked about, those were true?
24          THE DEFENDANT:  Yes, sir.
25          MR. HAVILAND:  Thank you.
```

1       THE COURT:  So, Mr. Dugan, at the time you possessed
2  the heroin, you knew it was heroin; is that correct?
3       THE DEFENDANT:  Yes, ma'am.
4       THE COURT:  And your -- the address, 302 Huron Street
5  in Houghton, Lake Michigan, is part of the Eastern District of
6  Michigan, Northern Division, is that -- do you have any reason
7  to dispute that?
8       THE DEFENDANT:  No, Your Honor.
9       THE COURT:  Very well.  I think the factual basis is
10 sufficient.  Do you agree, Mr. Haviland?
11      MR. HAVILAND:  Yes, Your Honor.
12      THE COURT:  Mr. Dugan, we've talked about the
13 charges, the penalties and the rights that you have and are
14 willing to give up by pleading guilty.  With all that in mind,
15 how do you want to plead today?
16      THE DEFENDANT:  I'd like to plead guilty.
17      THE COURT:  Thank you.  I find defendant is competent
18 to tender a plea, that the pleas is knowingly, voluntarily and
19 intelligently made and that the offense to which he has pled is
20 supported by an independent basis in fact containing each of
21 the essential elements of the offense.  I will, therefore,
22 order preparation of a presentence investigation report.  I
23 will recommend that the defendant's plea be accepted, that he
24 be adjudged guilty and have sentence imposed subject to the
25 sentencing judge's review and consideration of the plea

```
 1  agreement pursuant to Rule 11(c) of the Federal Rules of
 2  Criminal Procedure.
 3            Mr. Haviland, are you satisfied with compliance with
 4  Rule 11?
 5            MR. HAVILAND:  Yes, Your Honor.  Thank you.
 6            THE COURT:  Mr. Day?
 7            MR. DAY:  I am, Your Honor.
 8            THE COURT:  The next step then, Mr. Dugan, is you're
 9  referred to the probation department for their preparation of a
10  presentence report.  Do you have an appointment yet, Mr. Day?
11            MR. DAY:  I do not, Your Honor, but I will speak with
12  probation as soon as we're done here.
13            THE COURT:  Very well.  At that interview, Mr. Dugan,
14  that's one of those times that we talked about in the plea
15  agreement where you'll need to be truthful with them and candid
16  as you have been here, because you, of course, don't want to
17  make any false statements or withhold information that could
18  have the effect of increasing your guideline range.  Do you
19  understand that, sir?
20            THE DEFENDANT:  Yes, Your Honor.
21            THE COURT:  Very well.  Then I wish you luck with
22  that interview, and if there's nothing further for the record
23  then -- anything, Mr. Haviland?
24            MR. HAVILAND:  No, thank you, Your Honor.
25            THE COURT:  Mr. Day?
```

```
1           MR. DAY:  Nothing further, Your Honor.
2           THE COURT:  Court is in recess.  Thank you.
3        (At 10:11 a.m., court recessed.)
4
5
6
7
8
9
10
11
12
13
14                         *  *  *  *
15                     C E R T I F I C A T E
16    I certify that the foregoing is a correct transcript
      from the digital sound recording of the proceedings in
17    the above-entitled matter.
18
19                         _____
20    Date: 7-7-2015       Carol M. Harrison, RMR, FCRR
                           Official Court Reporter
21                         United States District Court
                           Eastern District of Michigan
22                         1000 Washington Avenue
                           Bay City, MI  48708
23
24
25
```