## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

JOHN DEREK DUGAN,

|                          |                                         |
|--------------------------|-----------------------------------------|
| *Petitioner*             | CRIM. CASE NO: 15-20073                  |
|                          | CIVIL CASE NO. 17-14102                  |
| *v.*                     | DISTRICT JUDGE THOMAS L. LUDINGTON       |
|                          | MAGISTRATE JUDGE PATRICIA T. MORRIS      |
| UNITED STATES OF AMERICA,|                                         |
|                          |                                         |
| *Respondent.*            |                                         |

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
### ON PETITIONER'S 28 U.S.C. § 2255 MOTION
### TO VACATE, SET ASIDE, OR CORRECT SENTENCE AND RESPONDENT'S
### MOTION TO DISMISS PETITION
(Docs. 22, 27)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Petitioner's motion to vacate (Doc. 22) be **DENIED** and that Respondent's motion to dismiss (Doc. 27) be **GRANTED.**

## II.   REPORT

### A.    Introduction

On February 11, 2015, Petitioner was charged in an indictment with two counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1)(Counts 1 and 2), one count of distribution of hydromorphone in violation of 21 U.S.C. § 841(a)(1)(Count 3), one count of distribution of heroin in violation of 21 U.S.C. § 841(a)(1)(Count 4), and one count of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1)(Count 5). Petitioner was detained pending trial. (Doc. 9.) Petitioner pleaded guilty to Count 5 of the indictment, pursuant to a Rule 11 plea agreement, on April 30, 2015. (Doc. 14.) On July 30, 2015, a sentencing hearing

was held and on August 3, 2015, judgment entered committing Petitioner to the Bureau of Prisons for 140 months. (Doc. 21 at 2.)

On December 19, 2017, Petitioner filed the instant motion to vacate sentence. (Doc. 22.) In lieu of a response, Respondent filed the instant motion to dismiss the petition (Doc. 27.)

Petitioner's §2255 motion to vacate his sentence asserts that he should not have been sentenced under the career offender provision of the guidelines because his prior Michigan controlled substance convictions do not fall within the definition of a federal controlled susbtance offense under USSG 4B1.1. His prior convictions are for "del/mfr marijuana" in 2205, "delivery of cocaine < 50 grams" in 2006, "del/mfr marijuana" in 2006, "del/mfr marijuana" in 2012, and "delivery of narcotic < 50 grams" in 2012.  (Doc. 14 at ID 52.)

**B.    Law and Analysis**

*1.    Legal Standards*

To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

Claims of ineffective assistance of counsel are governed by the Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense–not what bears a false label of 'strategy'–based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id.* at 694. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id.* at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364,(1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial

3

whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Id.* at 369 (citations omitted).

    2.    *Analysis*

Petitioner contends that his state convictions did not qualify for enhancement based on the United States Supreme Court's holding in *Mathis v. United States*, 136 S. Ct. 2243 (2016) and *United States v. Hinkle*, 832 F.3d 569, 576-77 (5th Cir. 2016).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), established a one-year statute of limitations on 2255 petitions, which begins to run on the latest of four possible dates. 28 U.S.C. § 2255(f). It usually runs from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). When a 2255 petitioner does not file an appeal, the judgment of conviction is final when the time for filing a notice of appeal expires. *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004); *United States v. Cottage*, 307 F.3d 494, 499 (6th Cir. 2002). According to Federal Rule of Appellate Procedure 4(b)(1), a defendant has fourteen days from the entry of judgment to file a notice of appeal. *Gillis v. United States*, 729 F.3d 641, 644 (6th Cir. 2013).  When a petitioner appeals to the Sixth Circuit, the appeal is dismissed, and there is no evidence that the petitioner sought a writ of certiorari to the United States Supreme Court, "§ 2255's one-year limitation period begins to run when the time for seeking such review expires." *Clay v. United States*, 537 U.S. 522, 532, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003). Where there is no evidence that a writ of certiorari was pursued, the limitation period becomes one year after the time for seeking certiorari expired,

i.e., one year and 69 days after the appeals court issued its mandate or one year and 90 days after the court of appeals entered its judgment. *Id.*

The one-year period can also run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).

In the instant case, Petitioner did not appeal. Accordingly, the motion to vacate should have been filed by August 17, 2015 (14 days after judgment was entered on August 3, 2015). Instead, the instant motion was filed on December 19, 2017. (Doc. 22.) Petitioner implicitly relies on the Supreme Court holding in *Mathis* to extend the time period and to render this motion timely. As indicated above, in order to extend the time period one year beyond a Supreme Court holding recognizing a right, Petitioner must show that the right was "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).

A brief history is helpful to set the stage for the *Mathis* holding. In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court held that the Armed Career Criminal Act's (ACCA's) residual clause, i.e., the clause that defines a "violent felony" to include an offense that "involves conduct that presents a serious potential risk of physical injury to another" is unconstitutionally vague and violates due process. 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court has further held that *Johnson* has retroactive effect in cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).

The Sixth Circuit held that since the United States Sentencing Guidelines ("USSG") § 4B1.1 (commonly known as the "career offender enhancement") also has a residual clause that is identical in wording to the residual clause in the ACCA, the *Johnson* rationale applies equally to

the sentencing guidelines residual clause defining a crime of violence. *See* USSG § 4B1.2(a); *United States v. Pawlak*, No. 15-3566, 2016 WL 2802723, at *8 (6th Cir. Mar. 13, 2016). However, the United States Supreme Court in *Beckles v. United States*, 137 S. Ct. 886 (Mar. 6, 2017), abrogated *Pawlak* and held that the sentencing guidelines are not subject to a void-for-vagueness challenge. Therefore, the residual clause of the career offender sentencing guidelines remains viable and any claims challenging the guideline must fail.

*Johnson* concerned the second half of the phrase under the ACCA §924(e)(2)(B)(ii), i.e., the residual clause. The residual clause follows a list of enumerated violent felonies under §924(e)(2)(B)(ii), i.e., "burglary, arson, or extortion, involves the use of explosives." *Mathis* governs how to interpret whether a state conviction qualifies under this list of generic offenses.

*Mathis* held that, in determining whether a prior state violent felony conviction counts toward a federal sentence enhancement under the ACCA, courts must apply the categorical approach - not the modified categorical approach - where a criminal statute establishes various means for satisfying a single element. *Mathis* focuses on the portion of the same subsection of the ACCA that was not addressed by the Court in *Johnson*.

The Court in *Mathis* found that Iowa's burglary statute had a broader locational element than generic burglary and thus, the Iowa conviction could not qualify as a prior violent felony conviction under the ACCA's enumerated offenses of "burglary, arson, or extortion, involves the use of explosives." §924(e)(2)(B)(ii).

On October 26, 2016, the Sixth Circuit decided *United States v. Ritchey,* 840 F.3d 310 (6th Cir. 2016). The Sixth Circuit provided a method for analyzing potential predicate violent crime convictions used under the ACCA under *Mathis* and held that a conviction under Mich. Comp.

Laws §750.110, for breaking and entering a building with intent to commit a felony or larceny therein, could not qualify as a violent felony under the ACCA since its elements were broader than those of the generic enumerated offense of burglary. The version of the statute analyzed in *Ritchey* states that "[a] person who breaks and enters, with intent to commit a felony or a larceny therein, a tent, hotel, office, store, shop, warehouse, barn, granary, factory or other building, structure, boat, ship, shipping container, or railroad car is guilty of a felony punishable by imprisonment for not more than 10 years." Mich. Comp. Laws §750.110.

The Court explained that "when a statute encompasses circumstances broader than generic burglary, the district court may look to 'the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable record of this information' - commonly referred to as *Shepard* documents - to determine whether the defendant 'necessarily admitted elements of the generic offense.' *Shepard v. United States*, 544 U.S. 13, 26 (2005)." *Ritchey*, 840 F.3d at 315. This approach only applies where the statute is truly divisible, i.e., where the statute "'lists multiple, alternative elements, and so effectively creates "several different . . . crimes,"' at least one of which is a generic burglary." *Ritchey*, 840 F.3d at 315, *citing Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). If a statutory list is "'drafted to offer' illustrative examples, then it includes only a crime's means of commission.'" *Id*. "Only if the record indicates that the listed items are elements, not alternative means, may the sentencing courts examine the *Shepard* documents to determine whether the crime the defendant was convicted of constituted a generic burglary." *Ritchey*, 840 F.3d at 315.

The Court in *Ritchey* determined that Michigan's list of locations is a list of means, not elements. *Id*. at 320. Therefore, the Court did not consider the charging documents or any other *Shepard* documents, because the Court found the statute was not divisible, i.e., it did not set forth elements of separate crimes. Thus, the Court held that Ritchey's conviction for breaking and entering could  not be used as predicate offenses to sentence him under the ACCA. Therefore, the Sixth Circuit vacated Ritchey's sentence and remanded for resentencing consistent with its decision and the United States Supreme Court's decision in *Mathis*.

In the instant case, Petitioner was not sentenced under the ACCA. He was sentenced as a career offender under the sentencing guidelines.

Petitioner relies on the Fifth Circuit case of *United States v. Hinkle*, 832 F.3d 569, 576-77 (5th Cir. 2016), for its conclusion that the rationale behind the Court's decision in *Mathis* should extend to the career offender sentencing guideline. It should be noted that *Hinkle* was a case decided on direct appeal, not pursuant to collateral review.

The Fifth Circuit in *Hinkle* also held that the Texas statute criminalizing the act of offering to sell a controlled substance was broader than the federal sentencing guidelines' definition of a controlled substance offense, that it was indivisible, and therefore could not be used to enhance Hinkle's sentence under the federal career offender guidelines. Petitioner also relies on this portion of the Fifth Circuit's holding and contends that Michigan's statute is also overbroad, indivisible, and thus, that Petitioner's convictions under the Michigan statute do not qualify for use under the career offender guidelines.

First, Petitioner 's motion is untimely. Under 28 U.S.C. § 2255(f)(3), the motion may be saved if filed within one year of the establishment of a right "newly recognized by the Supreme

Court" that is "made retroactively applicable to cases on collateral review." Petitioner cannot meet this threshold; therefore, his motion should be denied. Case law has consistently held that *Mathis* and *Descamps* (and *Hinkle*) did not pronounce a new rule of constitutional law made retroactive to cases on collateral review. *In Re Conzelmann*, 872 F.3d 375, 376 (6th Cir. 2017); *Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016)("*Mathis* has not been declared retroactive by the Supreme Court – nor is it a new rule of constitutional law."); *Groves v. United States*, 755 F.3d 588, 593 (7th Cir. 2014)("the Supreme Court has not made *Descamps* retroactive on collateral review."); *In Re Lott*, 838 F.3d 522, 523 (5th Cir. 2016); *United States v. Taylor*, F. App'x, 2016 WL 7093905, at *4 (10th Cir. Dec. 6, 2016)(collecting cases holding that *Mathis* did not announce a new rule).

Even if the Court were to address the merits, the result would be the same. At the time Petitioner was convicted in 2005, 2006, and 2012, the Michigan statute provided that "a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, an official prescription form, or a counterfeit prescription form." MCL 333.7401(1)(eff. date Jan. 6, 2003).  Petitioner contends that the Michigan statute's inclusion of "create" in addition to manufacture and deliver and the inclusion of "prescription form" and "counterfeit prescription form" on the description of prohibited conduct makes the Michigan statute more broad than the sentencing guideline description of a controlled substance offense. Under our sentencing guidelines a controlled substance offense is one that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit controlled substance) or the possession of a controlled substance (or a counterfeit

controlled substance) with intent to manufacture, import, export, distribute, or dispense." USSG § 4B1.2(b).

The Sixth Circuit has held that the same Michigan statutory section is not overbroad and is divisible such that convictions under this statute may properly be considered controlled substance offenses for purposes of enhancement under the career offender sentencing guidelines.

> [R]eliance on *Mathis* and *Hinkle* is misplaced. First, in applying the elements/means distinction to the specific criminal statutes, *Mathis* applied established Iowa law and *Hinkle* applied established Texas law. *See State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981) (holding that Iowa's burglary statute listed alternative means of satisfying the single locational element such that a jury need not agree on which location was involved in the offense); *Lopez v. State*, 108 S.W.3d 293, 299 (Tex. Crim. App. 2003) (holding that offering to sell a controlled substance is one means of satisfying the delivery element of the Texas controlled substance statute). Tibbs cites no Michigan law declaring that the relevant portions of M.C.L. § 333.7401 provide alternative means rather than elements. Second, *Hinkle* addressed only the word "deliver" and its definition; it did not discuss the full text of the predicate-offense statute, which states that a person commits the offense "if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed" in the penalty group. 832 F.3d at 572. *Hinkle* held only that the element of delivery was indivisible, and did not address whether the entire statute was indivisible such that manufacture, delivery, and possession with intent to deliver stated alternative means of satisfying a single element. *Id.* at 576. The latter, unaddressed inquiry is at issue here.
>
> Further, although there is no Michigan case addressing the meaning of "create," in context it is likely that the word is included in the statute in addition to "manufacture" because it refers to the objects "a prescription form" and "a counterfeit prescription form." Additionally, it appears that in Michigan, defendants are generally charged with a particular form of the various offenses listed in the statute—manufacture, creation, or delivery or possession with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription—and the act they are charged with becomes an element of the offense. *See, e.g., People v. Linton*, 2016 WL 7333422, at *2 (Mich. Ct. App. Dec. 15, 2016) (explaining the elements of manufacturing methamphetamine as including "the defendant manufactured a controlled substance" and the elements of delivering methamphetamine as including "the defendant delivered a controlled substance."). The same is true of "prescription form[ ] or counterfeit prescription form." *See, e.g., United States v. Solomon*, 592 Fed.Appx. 359, 361 (6th Cir. 2014) (referring to prescription form as an element of the statute). *See also Linton*, 2016 WL 7333422, at *2 (defining the elements of manufacturing methamphetamine as including "the defendant manufactured a controlled substance");

*People v. Mass*, 464 Mich. 615, 628 N.W.2d 540, 625 (2001) ("It is even more evident that subsection (2) of M.C.L. § 333.7401 entails the elements of separate offenses because subsection (2) covers various drug types as well as prescription forms. [T]hese textual clues support the conclusion that the amount and *nature* of controlled substances are elements of a delivery offense[.]") (emphasis in original); *People v. Wolfe*, 440 Mich. 508, 489 N.W.2d 748, 752 (1992), *amended* (Oct. 9, 1992) (defining the elements of possession with intent to deliver less than fifty grams of cocaine as including "that the recovered substance is cocaine").

Moreover, unlike the criminal statutes in *Mathis* and *Hinkle*, M.C.L. § 333.7401's subsections provide different penalties for the various offenses described. Violations of the statute involving a prescription form or a counterfeit prescription form are punishable by imprisonment for not more than 7 years or a fine of not more than $5,000 or both. M.C.L. § 333.7401(2)(f). In contrast, violations involving delivery/manufacture are subject to a much greater penalty. M.C.L. § 333.7401(2)(a)(i)-(iv). This is further indication that the statute set forth separate offenses and not alternative means of committing the same offense.

*United States v. Tibbs*, 685 F. App'x 456, 2017 WL 1314933, at *4–5 (6th Cir. Apr. 10, 2017).

In a recent published opinion, *United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017) the Sixth Circuit expressly embraced the analysis and ruling in *Tibbs* and confirmed that M.C.L. § 333.7401 is divisible and not overbroad. I therefore suggest that Petitioner's motion be denied.

## C.   Evidentiary Hearing

Section 2255 states that

> [u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). The Sixth Circuit has "observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine

the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).

On the other hand, no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Additionally,

> The words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists.

*United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993).

In the instant case, there is no material factual dispute that a hearing could address. I therefore suggest that Petitioner is not entitled to a hearing on the allegations raised in his motion.

### D.    Conclusion

For all the reasons stated above, I recommend that the Court deny Petitioner's motion to vacate (Doc. 22), and grant Respondent's motion to dismiss (Doc. 27.)

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of*

*Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947

(6th Cir. 1981). The parties are advised that making some objections, but failing to raise others,

will not preserve all the objections a party may have to this Report and Recommendation.

*Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit

Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR

72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any

objection must recite precisely the provision of this Report and Recommendation to which it

pertains. Not later than 14 days after service of an objection, the opposing party may file a

concise response proportionate to the objections in length and complexity. Fed. R. Civ. P.

72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in

the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule

without awaiting the response.

Date:  February 28, 2018                    S/ PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through
the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was sent
First Class Mail at John Derek Dugan #50804-039, Oxford Federal Correctional Institution,
Inmate Mail/Parcels, P.O. Box 1000, Oxford, WI 53952.

Date: February 28, 2018                    By s/Kristen Castaneda
                                           Case Manager